[Cite as *State v. Ledlow*, 2024-Ohio-2912.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                      :

                                                      No. 113484

    v.                                               :

DEVIN LEDLOW,                                   :

    Defendant-Appellant.                 :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 1, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-683419-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Lisa J. Turoso, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant Devin Ledlow ("Ledlow") appeals the trial court's judgment following a bench trial that convicted him of attempted strangulation and domestic violence. After a thorough review of the relevant facts and law, this court affirms.

# I. Factual and Procedural History

{¶ 2} Ledlow was charged with strangulation, a fourth-degree felony in violation of R.C. 2903.18(B)(3), with a furthermore specification that the victim was a family or household member, and domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A). The charges stemmed from an incident occurring on July 26, 2023, involving A.D., with whom he shares a child.

{¶ 3} Ledlow waived his right to a jury trial, and the matter was tried before the bench on November 15, 2023, where the following facts were adduced.

{¶ 4} A.D. testified that she had known Ledlow since May 2017 and that they had dated for about one year. In July 2018, the couple had a son ("Son"). Eventually, the couple ceased cohabitating but moved into the same apartment building so that they would easily be able to coparent Son.

{¶ 5} On the evening of July 26, 2023, A.D. testified that Ledlow had come to her apartment to get medicine for Son, but they all decided to have dinner together, "which was a regular occurrence for us." (Tr. 21.) Ledlow and A.D., at some point, got into an argument, and she ordered him to leave the apartment, but he refused. She stated that at some point, Ledlow "lunged after me and put his hands around my neck. He put his hands around my neck and then it was over and he left[.]" (Tr. 25.) At trial, she demonstrated how Ledlow placed his hands around her neck on a disposable foam cup, and described, "He lunged and put both hands out and grabbed . . . I know that at one point it was just the one hand. As I was pulling away and pushing him off of me, his hand came off and grabbed ahold of my necklace and

it shattered all over the floor." (Tr. 26.) Regarding her mental response, she testified that she was fearful that something would happen to her and wondered who would take care of Son. Regarding her physical response, she testified that she felt like she could not breathe, that her throat hurt, that her body hurt, and that she was tense from trying to keep herself upright.

{¶ 6} A.D. recorded the argument on her cell phone prior to the argument becoming physical. She testified that she did this because Ledlow had been working on his anger management and had usually been very good about leaving when she asked him to, but this time he was not listening so she began recording. The recording was played for the bench and A.D. described it. In the video, Ledlow is heard saying that he is not going to touch A.D.

{¶ 7} After Ledlow left, A.D. called the police who responded and took photos of her injuries. The 9-1-1 call was entered into evidence, and A.D. admitted during cross-examination that she never told the dispatcher that she had been strangled, choked, or grabbed by her neck or throat. A.D. testified that she never received any medical attention. On cross-examination, A.D. stated that she never lost consciousness as a result of the incident and admitted that she told law enforcement, in a statement, that she was fully able to breathe. When confronted with the discrepancy between her testimony at trial and her statement to the police, A.D. responded, "Yeah. I think it was — I think it was the thought of — I could breathe. I was able — I was fully conscious, I was able to see, you know, what was going on,

but in the sense of not being able to take a deep breath in, I couldn't do that." (Tr. 65.)

{¶ 8} A.D. was shown her written statement that she made on the evening of the incident, where she wrote that Ledlow tried entering the apartment and, upon refusal, "[her] neck was grabbed and pulled" and her necklace broke, after which he left. (Tr. 50.) A.D. admitted that the statement did not say she was strangled, choked, lost consciousness, or could not breathe. However, she maintained at trial that Ledlow had his hands on her neck for at least 30 seconds to one minute.

{¶ 9} The State also presented Patrolman Majed Abuzahrieh ("Ptl. Abuzahrieh") of the North Olmsted Police Department. Ptl. Abuzahrieh testified that he was dispatched to the scene of the incident along with Patrolman Pickens ("Ptl. Pickens") but was not the main responding officer and did not make any reports associated with this incident. Ptl. Abuzahrieh testified that A.D. was noticeably distraught, worrisome, and concerned and that he immediately saw a necklace in pieces on the ground. He observed red markings towards the front and sides of her neck and called in an evidence technician as a result. The evidence technician, Patrolman Petrie ("Ptl. Petrie"), arrived and documented the injuries by photographing them. He testified that A.D. was concerned about her safety for the rest of the evening and Son's wellbeing because of what he had observed between his parents.

{¶ 10} Ptl. Petrie testified that he was called to the scene to document physical evidence. He photographed red marks around A.D.'s neck and went

through them as they were introduced at trial. Ptl. Petrie also took photos of the broken necklace on the ground and the area where the incident occurred. He testified that he, along with Ptl. Pickens, went to Ledlow's apartment and made contact with him, arrested him, and took him into custody. According to Ptl. Petrie, Ledlow stated that the argument never got physical.

{¶ 11} Ptl. Pickens testified that he saw red marks along A.D.'s neck and around the back side of her neck. Ptl. Pickens testified that Ptl. Petrie was called after the marks were first observed, but he did not arrive until about 30 minutes later, and that the marks were more diminished at that point. Ptl. Pickens also testified that they located Ledlow, and, like Ptl. Petrie, testified that Ledlow denied grabbing A.D. at the neck but admitted to an argument.

{¶ 12} On cross-examination, Ptl. Pickens testified regarding the report that he wrote after responding to the incident. In the statement, he wrote that A.D. stated that Ledlow tried to reenter the apartment, grabbed her around her neck, and pinned her against the door. Ptl. Pickens confirmed that A.D. had told him that she did not lose consciousness and that she was able to breathe. Ptl. Pickens decided to arrest and charge Ledlow with strangulation, and a day later, A.D. informed Ptl. Pickens that she remembered that she had recorded a portion of the incident.

{¶ 13} A.D. brought the video in and Ptl. Pickens reviewed it, but he did not type up any addendums or supplements to the report detailing the contents of the video. Ptl. Pickens also admitted that he never interviewed Son, despite Son being present during the incident and crying in the recording.

{¶ 14} The State rested after Ptl. Pickens testified, and Ledlow's counsel moved for acquittal pursuant to Crim.R. 29 on both counts. The trial court denied the motion, and the parties picked a date for announcement of the judgment and sentencing.

{¶ 15} On November 22, 2023, the trial court found Ledlow guilty of the lesser included offense of attempted strangulation, in violation of R.C. 2923.02 and 2903.18(B)(3), a fifth-degree felony, and domestic violence as charged. On the attempted strangulation charge, Ledlow received a ten-day jail sentence, and on the domestic violence charge, he received two years of community-control sanctions. Ledlow was also ordered to pay $500 in restitution to A.D. for wage loss and childcare expenses.

{¶ 16} It is from this judgment that Ledlow appeals, assigning two errors for our review.

> I. There was insufficient evidence produced at trial to support a finding of guilt for the offense of attempted strangulation.

> II. The court lost its way by finding the defendant guilty of attempted strangulation against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 17} In his two assignments of error, Ledlow contests that his conviction for attempted strangulation is against the manifest weight of the evidence and is based on insufficient evidence. We review each in turn.

{¶ 18} Strangulation was enacted as a new offense on April 4, 2023, via R.C. 2903.18. Ledlow was charged with strangulation pursuant to R.C. 2903.18(B)(3),

which required the State to prove beyond a reasonable doubt that Ledlow knowingly "[c]ause[d] or create[d] a substantial risk of physical harm to another by means of strangulation or suffocation." Strangulation or suffocation is defined as "any act that impedes the normal breathing or circulation of the blood by applying pressure to the throat or neck, or by covering the nose and mouth." R.C. 2903.18(A)(1). "Physical harm" is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 19} Ledlow, however, was found guilty of *attempted* strangulation in violation of R.C. 2923.02. An attempt offense requires that the State prove beyond a reasonable doubt that a person "purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." It is undisputed that strangulation requires a mens rea of "knowingly" to complete the offense. R.C. 2923.02(A).

{¶ 20} Additionally, the Ohio Supreme Court has classified an attempt as occurring "when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus, *vacated on other grounds*, 438 U.S. 910 (1978). A "substantial step" must be "strongly corroborative of the actor's criminal purpose." *Id.*

{¶ 21} In finding Ledlow guilty of attempted strangulation pursuant to R.C. 2903.18(B)(3), the trial court noted that it did not find evidence that the act impeded breathing or circulation of the blood. The court explained, however, that it found evidence beyond a reasonable doubt "that [Ledlow] attempted to knowingly cause or create a substantial risk of physical harm by means of strangulation or suffocation because you did do an act, which is to say grasp [A.D.] by her throat and squeeze, that created a substantial risk of physical harm." (Tr. 142.) The court elaborated that "there was no evidence at trial beyond a reasonable doubt that the normal breathing or circulation of the blood was impeded. Just because that didn't occur, doesn't mean you didn't attempt strangulation." (Tr. 143.)

{¶ 22} In his first assignment of error, Ledlow challenges the sufficiency of the evidence as to the court's attempted strangulation finding. Ledlow argues that to find Ledlow guilty of attempted strangulation, the record needed to have "*at least* sufficient evidence that [] Ledlow undertook an act or course of conduct that was planned to culminate in impeding A.D.'s breathing or circulation, via pressure on the throat." He also argues that the record does not demonstrate that he "tried and failed" to strangle A.D. — in fact, the evidence demonstrated that he was a 200-pound man who "lunged" at a 120–125-pound woman, for almost as long as a minute, "without producing anything more than faint marks that resulted in no need for medical attention."

{¶ 23} A sufficiency-of-the-evidence challenge may be overruled if "'after viewing the evidence in a light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Worley*, 2021-Ohio-2207, ¶ 57, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 24} "[T]o be convicted of an attempt crime, a defendant must be shown to have attempted to commit the crime and to have acted with the 'specific intention to cause a certain result' or the 'specific intention to engage in conduct' of a certain nature." *State v. Nolan*, 2014-Ohio-4800, ¶ 7, quoting R.C. 2901.22(A).

{¶ 25} After a careful review of the record, we conclude that there was sufficient evidence upon which the trial court could have found the essential elements of an attempted strangulation. The record contains physical evidence indicating that A.D.'s neck was handled so as to leave marks on it — indicating that some level of friction or squeezing occurred, and that A.D.'s necklace, which was on her neck, ended up on the ground and broken into pieces; this is only something that occurs with substantial force involved. Moreover, A.D. herself testified that she could not breathe deeply, indicating that she could breathe, but her breathing was impeded or impaired. Viewing this evidence in the light most favorable to the prosecution, we conclude that the record contained sufficient evidence going to all of the elements of an attempted strangulation.

{¶ 26} We therefore overrule Ledlow's first assignment of error.

{¶ 27} Though a verdict may be supported by legally sufficient evidence, it may be against the manifest weight of the evidence. *State v. Knuff*, 2024-Ohio-902, ¶ 207, citing *State v. Robinson*, 162 Ohio St. 486, 487 (1955). While both challenges

involve the strength of the evidence, a sufficiency challenge attacks its adequacy and a challenge to the weight of the evidence attacks its persuasiveness. *State v. Jordan*, 2023-Ohio-3800, ¶ 15, citing *Disciplinary Counsel v. Smith*, 2017-Ohio-9087, ¶ 23. In conducting a review of the manifest weight of the evidence, the court must look at the entire record to determine "'whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Group*, 2002-Ohio-7247, ¶ 77, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1983). Nonetheless, a new trial is warranted only "'in the exceptional case in which the evidence weighs heavily against conviction.'" *Id.*, quoting *Martin* at *id.*

{¶ 28} In disputing the manifest weight of the evidence, Ledlow notes that the only eyewitness testimony came from A.D., whose account of the incident varied from the initial meeting with police officers until the time of trial. Ledlow specifically argues that the state of the evidence before the court was "a brief and incomplete recording, a broken necklace, small physical marks and the non-credible testimony of a repeatedly impeached woman." We disagree.

{¶ 29} On the contrary, the evidence and the inferences drawn therefrom points to more than just contact with A.D.'s neck. Her neck contained red marks, which could be suggestive of either friction from the necklace or repeated rubbing or squeezing by a hand. Certainly, if Ledlow had merely yanked the necklace from her neck, it would be unlikely to leave marks like those depicted in the photographs.

{¶ 30} We also note that the responding officers described A.D.'s demeanor immediately after the incident as shaken up and visibly distraught. Indeed, at the time she made the 9-1-1 call and at the time she gave her statement to Ptl. Pickens, both occurring immediately after the incident, she did not mention or recall that she had recorded a portion of the incident. This leads to the inference that A.D. also may have left out information regarding Ledlow's exact conduct, including touching her neck and strangulation. Moreover, the evidence demonstrates that A.D.'s main concern throughout this entire incident was the safety of Son.

{¶ 31} We acknowledge the alleged inconsistencies in A.D.'s accounts, but also note that the trial court was presented with this information multiple times. After considering the evidence, the trial court chose to believe A.D.'s account of the story and especially so when coupled when the evidence presented. We therefore cannot say that there is not competent, credible evidence in the record that supports a finding of attempted strangulation.

{¶ 32} We therefore overrule Ledlow's second assignment of error.

### III. Conclusion

{¶ 33} Ledlow has not demonstrated that the trial court's conviction for attempted strangulation was based on insufficient evidence or against the manifest weight of the evidence.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

LISA B. FORBES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR